# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE M. DESSERT,<br><br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No.: 3:17-cv-2306-MMA (RNB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 13, 14)** |

  This Report and Recommendation is submitted to the Honorable Michael M. Anello, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

  On November 14, 2017, plaintiff Yvette M. Dessert filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). (ECF No. 1.)

  Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED,** that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the

decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

On March 26, 2014, plaintiff filed an application for SSI under Title XVI of the Social Security Act, alleging disability since January 16, 2014. (Certified Administrative Record ["AR"] 253-262.) After her applications were denied initially and upon reconsideration (AR 140-43, 145-50), plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 153-55.) An administrative hearing was held on December 9, 2015. Plaintiff appeared at the hearing with counsel, and testimony was taken from her, a lay witness (her stepfather), and a vocational expert ("VE"). (AR 49-74.)

As reflected in his May 12, 2016 hearing decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, from the date her application was filed. (AR 116-34.) In an Order issued August 15, 2016, the Appeals Council granted plaintiff's request for review. It vacated the hearing decision and remanded the case to the ALJ with instructions *inter alia* to (a) evaluate a mental residual functional capacity assessment provided by plaintiff's treating psychiatrist, Dr. Brolaski, dated June 7, 2016 (about three weeks after the ALJ decision was issued) and (b) further evaluate the March 18, 2016 consultative psychiatric disability opinion of Dr. Glassman, to which the ALJ had accorded "little weight." (AR 135-39.)

A second administrative hearing was held on April 17, 2017. Plaintiff appeared at the hearing with new counsel, and testimony was taken from her and a different VE. (AR 29-48.) As reflected in his August 8, 2017 hearing decision, the ALJ again found that plaintiff had not been under a disability, as defined in the Social Security Act, from the date her application was filed. (AR 9-28.) The ALJ's decision became the final decision of the Commissioner on October 24, 2017, when the Appeals Council denied plaintiff's request for review. (AR 1-8.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 26, 2014, her application date.[1] (AR 14.).

At step two, the ALJ found that that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; major depressive disorder; and generalized anxiety disorder. (AR 14.)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 32.)

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 416.967(b), except that she could only occasionally bend, stoop, crouch, climb, crawl, kneel, and balance. The ALJ also limited plaintiff to "SVP-1 or -2 type work in a non-public setting with only occasional interaction with co-workers and supervisors." (AR 16.)

For purposes of his step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile would not be able to perform the requirements of plaintiff's past relevant work as an office manager. Accordingly, the ALJ found that plaintiff was unable to perform her past relevant work as actually performed or as generally performed in the national economy. (AR 20.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, conveyor belt bakery worker; assembler, small products; and garment

---

[1] SSI is not payable prior to the month following the month in which the application is filed. *See* 20 C.F.R. § 416.335.

sorter), the ALJ found that plaintiff was not disabled. (AR 20-21.)

## PLAINTIFF'S CLAIM OF ERROR

Plaintiff is claiming that, in determining her mental RFC, the ALJ failed to properly consider the opinions of Dr. Brolaski and Dr. Fajerman, two of her treating psychiatrists, and the opinion of Dr. Glassman, a consultative examining psychiatrist.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

Medical opinions are among the evidence that the ALJ considers when assessing a claimant's RFC. *See* 20 C.F.R. § 416.927(b).

The law is well established in this Circuit that a treating physician's opinion is entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however,

necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here, a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); *Magallanes*, 881 F.2d at 751; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Lester*, 81 F.3d at 830; *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984). The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830. Even if contradicted by another doctor, the opinion of an examining physician may only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830-31; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

Dr. George Brolaski

In its August 15, 2016 remand order, the Appeals Council specifically instructed the ALJ to evaluate Dr. Brolaski's June 7, 2016 assessment of plaintiff's mental residual functional capacity. In that assessment, Dr. Brolaski opined that plaintiff was "markedly limited" in almost all major mental functioning areas, except that she was only "moderately limited" in her ability to do the following: carry out very short and simple instructions; interact appropriately with the general public; ask simple questions or request assistance;

maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; and travel to unfamiliar places or use public transportation. (*See* AR 1572-75.) The ALJ stated in his decision on remand that he was giving "very little weight" to this opinion. (AR 18.)

One of the reasons proffered by the ALJ for according "very little weight" to Dr. Brolaski's opinion was that it was inconsistent with the findings and opinions of Dr. Gregory Nicholson. (AR 19.) However, any such inconsistency merely was determinative of the standard to be applied to the ALJ's proffered reasons for not crediting Dr. Brolaski's opinion; it was not a legally sufficient reason in itself. *See Lester*, 81 F.3d at 830 (in the event of conflict in the medical opinion evidence, an ALJ still must provide legally sufficient reasons to reject a treating or examining physician's opinion); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006) (existence of a conflict among the medical opinions by itself cannot constitute substantial evidence for rejecting a treating physician's opinion).

Another reason proffered by the ALJ was that Dr. Brolaski's opinion regarding plaintiff's mental limitations was "inconsistent with the mental status examinations documented by the progress notes from the San Ysidro Health Center." (*See* AR 18.) The ALJ did not specify in what respects Dr. Brolaski's opinion supposedly was inconsistent with the progress notes. Instead, the ALJ merely cited two exhibits from the Administrative Record, one comprised of 66 pages of medical records (AR 1715-90) and the other comprised of 20 pages of medical records (AR 1848-67). It is not the Court's function to comb the record to find specific conflicts when the ALJ makes this kind of general statement. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Accordingly, the Court finds that the supposed inconsistency with the progress notes also does not constitute a specific and legitimate reason for according "very little weight" to Dr. Brolaski's opinion.

Another reason proffered by the ALJ was that Dr. Brolaski's opinion was "inconsistent with the very conservative nature of [plaintiff's] mental health treatment

other than the two brief inpatient psychiatric hospitalizations." (*See* AR 18.) The qualifier at the end of the statement renders it disingenuous. Plaintiff was hospitalized twice for psychiatric reasons. The ALJ is not permitted to "cherry-pick" only the part of the medical record that supports his decision. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (concluding that the ALJ's specific reason for rejecting a treating physician was not supported by substantial evidence when the ALJ selectively relied on medical evidence of plaintiff improving while ignoring records indicating continued, severe impairment). Moreover, the Court is unable to reconcile the ALJ's characterization of plaintiff's mental health treatment as conservative with the evidence of record that, in addition to her two hospitalizations, she underwent therapy to address suicidal and homicidal ideation, and that she was prescribed a high dosage of a psychotropic drug "on special order." (*See* AR 1787, 1841, 1863, 1880.) The Court therefore finds that this proffered reason for according little weight to Dr. Brolaski' opinion was not supported by substantial evidence.

The other reason proffered by the ALJ for according "very little weight" to Dr. Brolaski's opinion was that progress notes showed she was "doing well on her medications." (*See* AR 18-19.) In support of this reason, the ALJ cited a single progress note from June 20, 2016 from another treating source at San Ysidro Health Center who was not one of plaintiff's attending mental health physicians. (*See* AR 1840.) Even if this single notation qualifies as inconsistent with Dr. Brolanski's June 7, 2016 opinion, it must be read in the context of plaintiff's overall diagnostic picture at the time. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014). According to progress notes dated four days later, on June 24, 2016, during the preceding twelve months, plaintiff had visited the Health Center fifteen times for mental health evaluation. On fourteen of those visits, she had presented with severe depression, and on the other with moderate depression. (AR 1785-86.) On June 24, 2016, plaintiff again presented with severe depression, and specifically with "anxious/fearful thoughts, depressed mood, difficulty concentrating, difficulty falling asleep, diminished interest or pleasure, excessive worry, fatigue, feelings of guilt, loss of appetite, restlessness and thoughts of death or suicide." Her risk factors

included relationship problems.  It was noted that her depression was "aggravated by conflict or stress and social interactions."  Her Global Assessment of Functioning ("GAF") Score was assessed at 45.  (*See* AR 1783-85.)  A GAF score of 45 is indicative of "serious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed.).  Thus, in the context of plaintiff's overall diagnostic picture at the time, the single progress note cited by the ALJ does not constitute an adequate evidentiary basis for rejecting Dr. Brolanski's opinion regarding plaintiff's mental limitations.  *See Ghanim*, 763 F.3d at 1161-63 (treatments notes evidencing some improved mood and energy level insufficient basis for rejecting opinions of claimant's treating sources about his impaired cognitive and social functioning where treatment notes consistently reflected that claimant continued to experience severe symptoms).

Dr. Jaga Nath Glassman

In its August 15, 2016 remand order, the Appeals Council also specifically instructed the ALJ to further evaluate the March 18, 2016 consultative psychiatric disability opinion of Dr. Glassman, to which the ALJ had accorded "little weight."  On the assessment form accompanying her 2016 psychiatric evaluation, Dr. Glassman had opined that plaintiff was markedly limited in a number of work-related mental activities, including the ability to carry out simple instructions, to make judgments on simple work-related decisions, to interact appropriately with supervisors, to interact appropriate with co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting.  (AR 1519-21.)  Dr. Glassman also had assigned plaintiff a GAF score of 40.[2]  (AR 1526.)

---

[2]  A GAF score of 31-40 is indicative of "[s]ome impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work ...)."  *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed.).

8

The ALJ stated in his decision on remand that he was giving "very little weight" to this opinion. (AR 18.)

Two of the reasons given by the ALJ were that Dr. Glassman's 2016 opinion was "inconsistent with the opinion of attending psychiatrist Fajerman" and "inconsistent with the findings and opinion of Dr. Nicholson." (AR 18.) The ALJ failed to specify in what respects Dr. Glassman's opinion supposedly was inconsistent with the opinions of the other two physicians. In any event, as discussed above, whether Dr. Glassman's opinion was controverted by the opinions of other physicians of record merely was determinative of the standard to be applied to the consideration of her opinion. It was not a legally sufficient reason in itself for not crediting it.

Another reason proffered by the ALJ for according "very little weight" to Dr. Glassman's 2016 opinion was that it was it was "inconsistent with [plaintiff's] course of treatment that has been very conservative other than the two brief inpatient psychiatric hospital admissions in March 2015 and February 2016." (AR 18.) The Court's finding above that that this proffered reason for according little weight to Dr. Brolaski' opinion was not supported by substantial evidence applies with equal force to Dr. Glassman's 2016 opinion.

The other reason proffered by the ALJ for discrediting Dr. Glassman's 2016 opinion was that it was "completely inconsistent with her own mental status examination and those documented by her mental health treating sources. (AR 18.) However, the ALJ did not specify in what respects Dr. Glassman's opinion supposedly was inconsistent with her own mental status examination or other mental status examinations by plaintiff's mental health treating sources. Nor did the ALJ provide any citations to the Administration Record to support this conclusory assertion. As discussed above, it is not the Court's function to comb the record to find specific conflicts when the ALJ makes this kind of general statement. Accordingly, the Court finds that this reason also does not constitute a specific and legitimate reason for according "very little weight" to Dr. Glassman's 2016 opinion.

In connection with the proceedings on remand, Dr. Glassman conducted a second evaluation of plaintiff and provided a second report dated May 31, 2017.[3] In that report, Dr. Glassman opined that plaintiff had marked impairment in her capacity to get along adequately with others and to behave in a socially-appropriate manner; moderate impairment in her capacity to understand and follow even simple instructions consistently; and marked impairment in her capacity to maintain concentration, persistence and pace, and to adapt to changes and stresses in a workplace setting. Dr. Glassman again assessed plaintiff's GAF score as 40. (*See* AR 1878-82, 1884-86.) In his decision, the ALJ mischaracterized Dr. Glassman as having opined that plaintiff had marked limits in the ability to understand and follow even simple instructions. (*See* AR 19.) Further, the ALJ stated that he was giving "very light weight" to this opinion. (*See id.*)

Most of the reasons proffered by the ALJ for according "very little weight" to Dr. Glassman's 2017 opinion were the same reasons proffered by the ALJ for according "very little weight" to Dr. Glassman's 2016 opinion, which the Court already has found are legally insufficient. The Court will not bother to address those reasons again. Rather, the Court will confine its focus to the "additional" reasons proffered by the ALJ for according "very little weight" to Dr. Glassman's 2017 opinion.

One of the "additional" reasons proffered by the ALJ for according "very little weight" to Dr. Glassman's 2017 opinion was that it was "at odds" with her prior mental status examination. (AR 19.) The ALJ failed to specify in what respects Dr. Glassman's second examination supposedly was at odds with the first or explain how any differences between the two evaluations impacted the credibility of the second evaluation. For example, the Court fails to see how Dr. Glassman's reduction in plaintiff's level of impairment from marked to moderate relating to her capacity to understand and follow

---

[3] According to the report, Dr. Glassman interviewed plaintiff on May 22, 2017. (AR 1878.) The signature date on the accompanying assessment form is May 30 2017. (AR 1886.)

even simple instructions consistently after another year of psychiatric treatment constitutes a legitimate reason for discounting the entirety of the later opinion.

Another "additional" reason proffered by the ALJ for according "very little weight" to Dr. Glassman's 2017 opinion was that it was "inconsistent with [plaintiff's] presentation at the hearing in which she displayed appropriate hygiene, attire, and was appropriate overall in appearance." (AR 19.) However, there was no inconsistency. Dr. Glassman had noted in her 2017 examination report that plaintiff was "clean and neat and decently-groomed" during her examination. (*See* AR 1881.)

Another "additional" reason proffered by the ALJ for according "very little weight" to Dr. Glassman's 2017 opinion was that plaintiff was compliant with her treatment regimen and therapy appointments. (AR 19.) It is not readily apparent to the Court from its review of the Dr. Glassman's 2017 report which part of her opinion plaintiff's compliance with her treatment regimen would undermine. In fact, Dr. Glassman did not offer an explicit opinion about plaintiff's ability to comply with or the efficacy of the treatment regimen. (*See* AR 1875-82.) To the extent the ALJ believed this evidence contradicted any of the marked and moderate impairments to which Dr. Glassman had opined, it was incumbent on the ALJ to provide an interpretation such that a reviewing court could analyze whether his decision was supported by substantial evidence. *Reddick*, 157 F. 3d at 725 ("ALJ must do more than offer conclusions. He must set forth his own interpretations and explain why [he], rather than the doctors, are correct."). The Court therefore finds that this proffered reason also was not a specific and legitimate reason on which the ALJ could properly rely to discount Dr. Glassman's 2017 opinion.

The other "additional" reason proffered by the ALJ for according "very little weight" to Dr. Glassman's 2017 opinion was that plaintiff "was able to travel to Arkansas by car and return by plane." (AR 19.) Again, to the extent the ALJ believed the evidence of this trip contradicted any of the marked and moderate impairments to which Dr. Glassman had opined, it was incumbent on the ALJ to provide an interpretation such that a reviewing court could analyze whether his decision was supported by substantial evidence. Based on

11

the ALJ's failure to do so, the Court finds that this proffered reason also was not a specific and legitimate reason on which the ALJ could properly rely to discount Dr. Glassman's 2017 opinion.

Dr. Leon Fajermen

Treating psychiatrist Leon Fajerman completed a Mental Residual Functional Capacity Assessment on March 14, 2017. (AR 1703-05.) Dr. Fajerman opined that plaintiff had marked limitations in three areas: her ability to ask simple questions or request assistance, her ability to get along with co-workers or peers, and her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (AR 1704.) However, Dr. Fajerman further opined that plaintiff had no limitations in any other mental functional category, including her understanding, memory, concentration, persistence, and adaptation abilities. (AR 1703-04.)

The ALJ stated in his decision that he was crediting Dr. Fajerman's opinion because he was plaintiff's attending psychiatrist and his opinion about plaintiff's mental limits were consistent with the progress notes from plaintiff's mental status examinations. (*See* AR 19.) Plaintiff contends that the ALJ erred when he failed to pose the limitations about which Dr. Fajerman opined to the VE or incorporate them in his assessment of plaintiff's functioning. (*See* AR 18-19.)

An ALJ is required to consider all limitations imposed by a plaintiff's impairments, even those that are not severe. *See* Social Security Ruling ("SSR") 96-8p (1996); *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (finding the ALJ erred by not including a significant limitation in his assessment of plaintiff's RFC). However, the Court concurs with the Commissioner that the ALJ did properly account for the limitations assessed by Dr. Fajerman by restricting plaintiff to unskilled work in a non-public setting with only occasional interaction with co-workers and supervisors and by posing a hypothetical to the VE that comported with that restriction. (*See* AR 16, 45.)

**CONCLUSION AND RECOMMENDATION**

In conclusion, the Court finds that, in determining plaintiff's mental RFC, the ALJ did not follow the proper legal standard when he properly considered the opinions of Dr. Brolaski and Dr. Glassman. Accordingly, the Commissioner's decision must be reversed.

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

The Court is mindful of Ninth Circuit authority for the proposition that, where an ALJ failed to properly consider either subjective symptom testimony or medical opinion evidence, it is sometimes appropriate to credit the evidence as true and remand the case for calculation and award of benefits. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1019-21 (9th Cir. 2014). However, in *Ghanim*, 763 F.3d at 1167, a case decided after *Garrison*, another Ninth Circuit panel did not apply or even acknowledge the "credit as true" rule where substantial evidence did not support an ALJ's rejection of treating medical opinions and his adverse credibility determination; instead, the panel simply remanded the case for further administrative proceedings. And, in *Marsh v. Colvin*, 792 F.2d 1170, 1173 (9th Cir. 2015), the panel did not apply or even acknowledge the "credit as true" rule where the ALJ had failed to even mention a treating source's opinion that the claimant was "pretty

much nonfunctional"; instead, the panel simply remanded the case to afford the ALJ the opportunity to comment on the doctor's opinions.

Here, although the Commissioner has argued that the proper remedy in the event of reversal would be a remand to the Commissioner for further administrative proceedings (*see* ECF No. 14-1 at 24-25), plaintiff has only "respectfully request[ed] this Court seriously consider granting a reversal and ordering benefits be paid forthwith." (*See* ECF No.13 at 24.) The Court deems plaintiff's failure to adequately brief the issue of the appropriate remedy and failure to even reply to the Commissioner's contention in this regard as a concession to the correctness of the Commissioner's position.

For the foregoing reasons, this Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See* Fed. R. Civ. P. 72(b)(2). *See id.*

IT IS SO ORDERED.

Dated: July 10, 2018

_____
ROBERT N. BLOCK
United States Magistrate Judge